IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| LYONDO LARELL WARE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CR 122-019 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 103), Petitioner's § 2255 motion be **DISMISSED**, this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.       BACKGROUND

### A.       Indictment and Superseding Indictment

On March 1, 2022, the grand jury in the Southern District of Georgia returned a single-count Indictment charging Petitioner with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). United States v. Ware, CR 122-019, doc. no. 1, pp. 1-2 (S.D. Ga. Mar. 1, 2022). For this charge, Petitioner faced a statutory maximum of not more than ten years imprisonment. (Id. at 4.) The Court appointed attorney Joseph T. Rhodes as counsel for Petitioner. (Doc. no. 7.)

On September 8, 2022, the grand jury returned the Superseding Indictment charging Petitioner with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1).  (Doc. no. 25.)   The Superseding Indictment alleged Petitioner's sentence was subject to enhancement under the Armed Career Criminal Act ("ACCA") because Petitioner had three prior qualifying convictions under 18 U.S.C. § 924(e).  (Id. at 1-2.)  The ACCA enhancement called for a minimum of fifteen years imprisonment and a maximum of life imprisonment. (Doc. no. 26.)  On October 3, 2022, Mr. Rhodes failed to appear for Petitioner's initial appearance for the Superseding Indictment and Petitioner moved for appointment of new counsel.  (Docs. no. 31, 32.)   The Court granted Petitioner's motion and appointed attorney Richard H. Goolsby as substitute counsel.  (Doc. no. 33.)

## B.  Guilty Plea

On May 24, 2023, Petitioner pled guilty to the Superseding Indictment.  (Doc. nos. 74, 76-78.)  The Plea Agreement identified the elements of the offense as "(1) that Defendant knowingly possessed a firearm in or affecting interstate or foreign commerce; (2) that, before possessing the firearm. Defendant had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year; (3) that Defendant knew of said conviction at the time he possessed the firearm in question; and (4) that prior to committing the offense charged in the superseding indictment, Defendant was convicted of at least three crimes of violence and/or serious drug offenses, qualifying offenses as defined by Title 18, United States Code, Section 924(e)."  (Doc. no. 78, pp. 1-2, "Plea Agreement.")

In exchange for the guilty plea, the government agreed that, if and only if the Court determined Petitioner qualified as an armed career criminal, the government would recommend a sentence at the low end of the guideline range.  (Id. at 4.)  The Plea Agreement contained the following factual basis for his guilty plea:

On or about September 22, 2021, in Richmond County, within the Southern District of Georgia, the defendant, LYONDO LARELL WARE, knowing he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, a firearm, to wit, a Clock .45 ACP caliber pistol, which had been transported in interstate and foreign commerce.

Further, prior to committing the offense charged in the Superseding Indictment, the defendant, LYONDO LARELL WARE, was previously convicted of the following criminal offenses which occurred on occasions different from one another to wit:

1) Possession of Cocaine with Intent to Distribute (2007RCCR00880), Richmond County Georgia, Offense date: 5/21/2007, Conviction date: 7/20/2007;

2) Terroristic Threats (2011RCCR01872), Richmond County Georgia, Offense date: 8/14/2009, Conviction date: 1/3/2012; and

3) Possession of Methamphetamine with Intent to Distribute (2014RCCR01720), Richmond County Georgia, Offense date: 8/23/2014, Conviction date: 1/15/2015.

(Id. at 2.) With his signature on the Plea Agreement, Petitioner "agree[d] to the accuracy of the[se] facts, which satisfy each of the offense's required elements." (Id.)

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. (Id. at 7-8.) Absent those conditions, Petitioner "explicitly and irrevocably instruct[ed] his attorney not to file an appeal." (Id. at 8.) Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. (Id.) Moreover, Petitioner attested counsel had "represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." (Id. at 9.)

At the change of plea hearing, United States District Judge J. Randal Hall first asked Petitioner whether anyone had threatened, pressured, or forced him into pleading guilty. (Doc. no. 101, p. 2.) Petitioner responded, "No, sir." (Id.) Judge Hall then reviewed the Superseding

Indictment and confirmed Petitioner had an opportunity to review it with counsel.  (Id. at 4-5.)
Judge Hall also asked whether Petitioner understood the charge, whether Petitioner was
satisfied with the amount of time he had to discuss the charge with counsel, and whether
Petitioner was satisfied with the assistance his counsel provided.  (Id. at 5.)  To each of these
questions, Petitioner responded, "Yes, sir."  (Id.)  Judge Hall reviewed the trial-related rights
Petitioner would waive if he entered a plea of guilty.  (Id. at 5-7.)  Among the rights explained,
Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's
burden to prove guilt beyond a reasonable doubt, the right to be present and confront witnesses,
and the right to remain silent.  (Id.)  Judge Hall asked Petitioner whether, knowing these rights,
Petitioner wished to waive those rights and plead guilty.  (Id. at 7.)  Petitioner replied, "Yes,
sir."  (Id.)

Next, Judge Hall discussed the Plea Agreement and confirmed Petitioner had signed it.
(Id.)  Judge Hall asked whether Petitioner had carefully read the Plea Agreement and reviewed
it with counsel before signing.  (Id.)  Petitioner affirmed he had.  (Id.)  Petitioner likewise
affirmed he agreed to all terms in the Plea Agreement.  (Id.)  Judge Hall again asked Petitioner
whether anyone on behalf of the government promised Petitioner anything other than what was
contained in the Plea Agreement.  (Id.)  Petitioner responded, "No, sir."  (Id.)

Judge Hall explained the Plea Agreement and specifically reviewed the appeal and
collateral attack waiver provisions.  (Id. at 8-9.)  When asked whether he understood the Plea
Agreement contained these provisions, Petitioner replied, "Yes, sir."  (Id. at 9.)  Judge Hall
explained the potential penalties Petitioner could face:

> Imprisonment for not more than 10 years, fined not more than $250,000,
> supervised release of not more than three years, $100 special assessment. In this
> case, however, if you are found to be an armed career criminal which is three or
> more qualifying convictions pursuant to 18 U.S.C. § 924(e) then the potential
> penalties could be not less than 15 years of imprisonment, no more than life --

> so a minimum statutory -- mandatory statutory penalty -- a fine of not more than $250,000, supervised release of not more than five years, and, again, a $100 special assessment.  In addition, I have the power to order the forfeiture of the firearm identified in the Plea Agreement.  Do you understand these are the potential penalties you could face?

(<u>Id.</u> at 9-10.)  Petitioner responded, "Yes, Sir."  (<u>Id.</u> at 10.)

Judge Hall also explained the rights Petitioner would lose because of the felony conviction, including "the right to vote, to serve on a jury, to hold public office, and to own or possess firearms and ammunition."  (<u>Id.</u>)  Petitioner affirmed he understood the potential consequences.  (<u>Id.</u> at 10-11.)  Judge Hall explained how sentencing would proceed, including use of the Federal Sentencing Guidelines and Presentence Investigation Report.  (<u>Id.</u> at 11-12.)  Petitioner affirmed he understood how he would be sentenced, and Petitioner's counsel affirmed he and Petitioner previously discussed the sentencing guidelines.  (<u>Id.</u> at 12.)  Petitioner also confirmed no one promised, predicted, or prophesized the specific sentence Petitioner would receive.  (<u>Id.</u>)

Lastly, Judge Hall explained the charge and elements of the offense.  (<u>Id.</u>)  Petitioner affirmed he understood the elements the government would need to prove.  (<u>Id.</u> at 12-13.)  Petitioner likewise agreed the government would be able to prove the necessary elements.  (<u>Id.</u> at 13.)  Next, the Court reviewed the factual basis for the guilty plea by proffer.  (<u>Id.</u>)  Judge Hall asked Petitioner whether the government's proffer was an accurate description of his conduct, Petitioner agreed it was.  (<u>Id.</u> at 14.)  Petitioner affirmed to the Court he still wanted to plead guilty.  (<u>Id.</u>)  Petitioner also affirmed he wanted to plead guilty because he was, in fact, guilty.  (<u>Id.</u>)  In conclusion, Judge Hall accepted Petitioner's guilty plea.  (<u>Id.</u> at 14-15.)

### C.    Sentencing

The United States Probation Office prepared a Presentence Investigation Report, (doc. no. 89, "PSI"), which set Petitioner's Total Offense Level at thirty-one with criminal history

VI and a guidelines imprisonment range of 188 to 235 months.  (PSI ¶¶ 25, 47, 74.)  "Since all relevant conduct was taken into consideration when calculating the defendant's offense level, the plea agreement had no impact on the guideline calculation, aside from the reduction he received for acceptance of responsibility."  (Id. ¶ 75.)

Petitioner was sentenced on October 25, 2023.  (Doc. no. 102.)  The Court first addressed Petitioner's objections to the PSI.  (Id. at 3; doc. no. 85.)  Petitioner objected to the enhancement of four levels in paragraph 17 for possession of a firearm in relation to a drug offense.  (Doc. no. 102, p. 3; doc. no. 85, p. 2.)  The Court overruled this objection because "that firearm had the potential of facilitating another felony offense—in this case at a minimum a felony possession amount of cocaine and beyond the minimum with the presence of a digital scale and a box of clear, plastic sandwich bags, possession with intent to distribute."  (Doc. no. 102, p. 3.)

Petitioner also objected to paragraphs 22, 73, and 74, which involved the ACCA enhancement and whether Petitioner's prior conviction for terroristic threats was a "violent felony" under the ACCA.  (Doc. no. 102, pp. 9; doc. no. 85, pp. 2-3.)  Defense counsel argued the Eleventh Circuit's decision in United States v. Oliver, 962 F.3d 1311 (11th Cir. 2020), holding a Georgia terroristic threat conviction qualifies as a violent felony, was abrogated by the United States Supreme Court in Borden v. United States, 593 U.S. 420 (2021).  (See generally id.)

After hearing argument from the parties at sentencing, the Court found it was "not willing to find that at this stage that the terroristic threats is an appropriate predicate offense," and, as such, upheld Petitioner's objection to application of the ACCA enhancement.  (Doc. no. 102, pp. 18-19.)  Because the Court upheld Petitioner's objection, Petitioner's Total Offense Level was reduced from thirty-one to twenty-five, but Petitioner's criminal history

level remained at VI.  (Id. at 19.)  As a result, the Guidelines imprisonment range was reduced to 110-120 months, with 120 months being the statutory maximum term of imprisonment without the ACCA applying.  (Id. at 19-20.)  The Court noted Petitioner submitted *pro se* objections, which the Court determined would be appropriately addressed as arguments in mitigation.  (Id. at 20-21.)

Judge Hall adopted the factual statements in the PSI that were consistent with his rulings, noting the factual statements impacted by Petitioner's objections and modified by his rulings.  (Id. at 21.)  Judge Hall likewise adopted the revised Guideline range of 110 to 120 months imprisonment with the statutory maximum of 120 months, one to three years of supervised release, a $20,000 to $200,000 fine, and a $100 special assessment.  (Id. at 21-22.)  After hearing remarks from all interested parties and Petitioner declining to make any statement, Judge Hall sentenced Petitioner to 120 months of imprisonment.  (Id. at 23, 27.)

On November 1, 2023, Mr. Goolsby filed the Notice of Post-Conviction Consultation Certification ("NPCC"), containing both his and Petitioner's signatures.  (Doc. no. 95-1.)  The NPCC specifically states Petitioner "has decided not to file an appeal" and Mr. Goolsby "explained to [him] the consequences of failing to do."  (Id. at 3.)  Thus, Petitioner waived his right to "complain about the process that led up to [his] conviction."  (Id.)  In keeping with the terms of the Plea Agreement and NPCC, Petitioner did not file a direct appeal.

### D.    § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

(1)    Counsel provided ineffective assistance by failing to seek an order vacating the guilty plea after the Court determined Petitioner should not be subjected to an ACCA enhancement.

(2)    Counsel provided ineffective assistance by incorrectly advising

Petitioner he was subject to the ACCA enhancement and a life term of imprisonment when he was not.

(3)     His guilty plea was not entered knowingly or voluntarily because counsel provided ineffective assistance by misinforming Petitioner about the applicable penalties.

(4)     Because counsel provided ineffective assistance, Petitioner unknowingly and involuntarily plead guilty to an offense for which he was actually innocent.

(5)     Because counsel provided ineffective assistance, Petitioner was denied his right to appeal the unconstitutional judgment of conviction and sentence.

(See generally doc. no. 96.)

Respondent moves to dismiss Petitioner's § 2255 motion arguing Petitioner's valid guilty plea bars his ineffective assistance of counsel claims and, in any event, his claims are barred by a valid collateral attack waiver, procedurally defaulted, or are substantiality without merit.  (Doc. no. 103.)  On March 19, 2024, the Court received Petitioner's late response to the motion to dismiss, reasserting the same arguments as his § 2255 motion.  (Doc. no. 105.)

## II.   DISCUSSION

### A.     Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are subject to the two-part test enunciated in in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (per curiam). Under the first prong, Petitioner must show "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). It is not enough to show ignorance of the law.  Harich v. Dugger, 844 F.2d 1464, 1470 (11th

Cir. 1988) (*en banc*), *partially overruled on other grounds*, <u>Davis v. Singletary</u>, 119 F.3d 1471, 1481-82 (11th Cir. 1997).  "Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel."  <u>Id.</u>  The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . .  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).

Counsel is not required to "pursue every path until it bears fruit or until all available hope withers."  <u>Puiatti v. Sec'y, Fla. Dep't of Corr.</u>, 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting <u>Foster v. Dugger</u>, 823 F.2d 402, 405 (11th Cir. 1987)).  The impact of a guilty plea on the deficiency analysis is substantial both with respect to the scope and nature of the inquiry. As to scope, the Supreme Court explained as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in <u>McMann [v. Richardson</u>, 397 U.S. 759 (1970)].

<u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973).

As to nature of the inquiry, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial . . . ."  <u>Stano v. Dugger</u>, 921 F.2d 1125, 1151 (11th Cir. 1991) (*en banc*) (quoting <u>Wofford</u>, 748 F.2d at 1508).  When a client pleads guilty, defense counsel "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."  <u>Id.</u>; <u>see also</u> <u>Carter v. United States</u>, 288 F. App'x 648,

649 (11th Cir. 2008). Counsel can impart such an understanding by offering his informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue. Wofford, 748 F.2d at 1508. Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses. Chandler, 218 F.3d at 1317. "A tactical decision is ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." Davidson v. United States, 213 F. App'x 769, 770 (11th Cir. 2007). As has been long-settled, "that a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." McMann, 397 U.S. at 770.

The Supreme Court described at length the impact of a guilty plea on the Strickland deficiency analysis in Premo v. Moore, 562 U.S. 115, 125 (2011), when reversing a federal appeals court that found ineffective assistance by counsel who did not file a motion to suppress on behalf of a state defendant who pled guilty. Courts must "respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel." Id. Judicial restraint is critical because "bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." Id. at 124. Furthermore, "[t]he absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered." Id. at 126.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what

the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).  The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time."  Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such

"in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, in addition to showing counsel's representation fell below an objective standard of reasonableness, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. The prejudice determination is not based on whether a petitioner would have ultimately prevailed on the specific issues underlying the ineffectiveness claim, "but instead on whether [a petitioner] would have pleaded guilty had counsel's performance not been deficient." Davidson v. United States, 138 F. App'x 238, 240 (11th Cir. 2005) (per curiam). In particular, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Diveroli v. United States, 803 F.3d 1258, 1263 (11th Cir. 2015) (citing Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). Thus, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

## B.    Petitioner Is Not Entitled to Relief on Any Pre-Plea Ineffective Assistance Claims in Grounds Two Through Four

Petitioner asserts in Grounds Two through Four he received ineffective assistance of counsel because Mr. Goolsby incorrectly advised Petitioner he qualified for an ACCA

enhancement.  (See doc. no. 96.)  Thus, according to Petitioner, his guilty plea was not entered knowingly or voluntarily, causing him to plead guilty to an offense for which he was "actually innocent."  (Id.)  These claims are barred by the entry of a valid guilty plea, and in any event, are devoid of merit.

### 1.     Petitioner's Guilty Plea Was Knowing and Voluntary

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion,

(2) understands the nature of the charges, and (3) understands the consequences of his plea."

United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations

omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . .

. must show a reasonable probability that, but for the error [under Rule 11 of the court accepting

the guilty plea], he would not have entered the plea."  Id. at 1020 (quoting United States v.

Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2.     Judge Hall's Colloquy with Petitioner Satisfied the Core Principles

Judge Hall thoroughly reviewed the charge brought against Petitioner from the

Superseding Indictment, specifically informed Petitioner in clear terms of the charge to which

he was pleading guilty, and reviewed the elements of the offense the government would have

to prove to obtain a conviction.  (Doc. no. 101, pp. 2-7.)  To each question asked by Judge

Hall, Petitioner affirmatively replied "Yes, sir."  (See id.)  Judge Hall also provided a detailed

explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed

he understood his decision to plead guilty would result in a waiver of these rights.  (Id. at 7.)

Petitioner testified that no one had forced, threatened, or pressured him to plead guilty.  (Id. at

2.)   Moreover, Petitioner affirmed he had the opportunity to go over the Superseding

Indictment with counsel, had enough time to discuss the charge, and was satisfied with the

assistance counsel provided.  (Id. at 4-5; see also Plea Agreement, p. 9 ("Defendant believes

that his attorney has represented him faithfully, skillfully, and diligently, and he is completely

satisfied with the legal advice given and the work performed by his attorney."); id. at 12 ("I

have read and carefully reviewed this agreement with my attorney.")).

Judge Hall next informed Petitioner of the possible penalty he faced upon conviction.

Judge Hall explained the *potential* mandatory minimum and maximum sentence *if* Petitioner

was found to be an armed career criminal and sentenced under an ACCA enhancement

pursuant to 18 U.S.C. § 924(e).  (Id. at 9-10.)  Judge Hall explained how sentencing would proceed, including use of the Federal Sentencing Guidelines and PSI. (Id. at 11-12.)  Petitioner affirmed he understood the potential penalties, how he may be sentenced, and Petitioner's counsel affirmed he and Petitioner previously discussed the sentencing guidelines.  (Id. at 12.)  Petitioner also confirmed no one promised, predicted, or prophesized the specific sentence that Petitioner would receive.  (Id.)

Despite multiple opportunities, Petitioner expressed no hint of dissatisfaction or pressure during the lengthy plea colloquy.  At no point did Petitioner ask for more time to consider his decision to enter his plea, even following an exchange between Petitioner and the Court about whether Petitioner had adequately discussed the plea and all its provisions with his counsel, including the potential penalties if sentenced with an ACCA enhancement.  (Id. at 9-12.) Just as importantly, the exchange with Judge Hall left no doubt the ACCA enhancement had not yet been decided and would only be decided at sentencing.  (See id. at 9-10.)  For this reason, Judge Hall took the time to review the maximum penalties both with and without the enhancement.  Petitioner understood these things and swore to Judge Hall that he, in fact, did.

The Court declines to accept Petitioner's new allegations over his sworn testimony. See Gambrel v. United States, No. CR 109-003, 2013 WL 3934205, at *14 (S.D. Ga. July 30, 2013); Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

Indeed, Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charge and consequences of his guilty plea, and Petitioner was not coerced into pleading guilty. Moriarty, 429 F.3d at 1019. Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea. Petitioner has not argued, let alone shown, a reasonable probability that but for any alleged error at the Rule 11 proceeding, he would not have entered his guilty plea. Dominguez Benitez, 542 U.S. at 83. Although the Court finds Petitioner's guilty plea was knowing and voluntary, because Petitioner alleges in Ground Two that Mr. Goolsby provided constitutionally ineffective assistance leading up to entry of his guilty plea, the Court will also address the merits of Petitioner's claim below. See, e.g., Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (*per curiam*) (stating "accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by" plea).

### 3. Even if Grounds Two, Three, and Four Were Not Barred by Entry of a Valid Guilty Plea, the Claims Are Without Merit

In Grounds Two, Three, and Four, Petitioner accuses Mr. Goolsby of ineffective assistance in advising him of the potential sentence for an ACCA enhancement and avers he would have never pled guilty had he known Judge Hall would find at sentencing he did not qualify for the enhancement. The argument fails for at least three reasons.

First, Mr. Goolsby's representation was not in any way deficient. If anything, it was exemplary. Indeed, Mr. Goolsby correctly advised Petitioner the government was seeking the ACCA enhancement, the maximum enhanced penalty was life imprisonment, and Judge Hall would determine whether the enhancement applied at sentencing. Judge Hall confirmed all three during the change of plea hearing. (See generally doc. no. 101.) Next, after Defendant changed his plea to guilty, Mr. Goolsby vigorously argued at sentencing the enhancement did

not apply and won the argument despite, according to the government, several Eleventh Circuit cases on point that suggested the enhancement did, in fact, apply. (See generally doc. no. 102.) Far from being deficient, this is excellent legal work that saved Petitioner from a sentence of life imprisonment.

Second, even if Mr. Goolsby had provided incorrect sentencing information, which he did not, Petitioner cannot show the requisite prejudice because at the change of plea hearing Judge Hall correctly recited the minimum and maximum penalties, both with and without the ACCA enhancement, and Petitioner confirmed he understood. See United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (per curiam) (finding no prejudice where counsel's deficient advice about possible sentencing implication was "cured" by district court, which explained "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea"); see also United States v. Herrington, 350 F. App'x 363, 369 (11th Cir. 2009) (per curiam) (affirming district court refusal to allow withdrawal of guilty plea where court at plea hearing set forth maximum penalties and explained court not bound by counsel's sentencing estimates); United States v. Pease, 240 F.3d 938, 940-41 (11th Cir. 2001) (concluding any inaccuracies in sentencing projection by defense counsel cured by court's colloquy).

In light of Judge Hall's thorough colloquy, Petitioner cannot show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Petitioner cannot escape his sworn declarations to Judge Hall in an after-the-fact blanket assertion that there is a "reasonable probability [he] would have persisted in his desire to go to trial." See Blackledge, 431 U.S. at 74; Rogers, 848 F.2d at 168; Stitzer, 785 F.2d at 1514 n.4. "The law permits no one to accept the benefit of a guilty-plea deal, suffer buyer's remorse, then go back and criticize pretrial defense efforts that

were cut off by agreeing to the deal." Harris v. United States, No. CV 410-069/CR 407-285, 2011 WL 1740702, at *5 (S.D. Ga. Apr. 11, 2011), *adopted by*, 2011 WL 1740306 (S.D. Ga. May 5, 2011).  As Petitioner cannot meet either prong of the Strickland analysis, his ineffective assistance of counsel claims in Grounds Two, Three, and Four all fail.

### C.   Petitioner Cannot Prevail on Ground Five Because He Signed a Certificate Confirming His Decision Not to File an Appeal

Petitioner's allegation that he asked Mr. Goolsby to file a direct appeal is undermined by the record.  Cases in which a criminal defendant explicitly instructs his attorney to file a notice of appeal are subject to a bright-line rule.  "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); see also Flores-Ortega, 528 U.S. at 477-78 (holding it is professionally unreasonable for attorney to fail to follow defendant's express appeal instructions).  Assuming Petitioner never instructed Mr. Goolsby to file an appeal, the inquiry does not end there.

All defense counsel have a general duty to consult about an appeal, including informing a client about the right to appeal, advising the client about the advantages and disadvantages of taking an appeal, and making a reasonable effort to determine whether the client wishes to pursue an appeal.  Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007).  Despite this general duty, the Supreme Court has specifically declined to adopt "a bright-line rule that counsel must always consult with the defendant regarding an appeal." Flores-Ortega, 528 U.S. at 480.  Rather, taking into consideration the totality of the circumstances, counsel has a duty to consult regarding an appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2)

that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id.

Here, Petitioner asserts he "requested that counsel appeal from the judgment" and "[c]ounsel explained that since he had entered into a plea agreement waiving his right to appeal, no appeal could be taken." (Doc. no. 96, p. 3.) Petitioner, however, does not dispute that he signed and executed the Notice of Post-Conviction Consultation Certification required by the Court. (Doc. no. 95.) By signing the certification, Petitioner confirmed defense counsel fully explained the appellate process and Petitioner made the informed decision *not* to pursue a direct appeal. (Id.)

In sum, Petitioner's assertion that Mr. Goolsby misinformed him as to the nature of his appellate rights and failed to file an appeal is directly refuted by Petitioner's certification. See Graham v. United States, No. 22-13757, 2023 WL 7457120, at *1 (11th Cir. 2023) (denying COA on § 2255 movant's claim of ineffective assistance of counsel in failing to file an appeal where district court found undisputed postconviction consultation certification established informed decision not to take an appeal); Allen v. United States, No. 16-17232-C, 2017 WL 5999039, at *5 (11th Cir. June 2, 2017) (denying COA on § 2255 movant's claim she instructed her attorney to file a notice of appeal where record contained form defendant signed stating otherwise).

### D.    Ground One Fails on the Merits

Petitioner alleges Mr. Goolsby provided ineffective assistance by failing to move for entry of an order withdrawing the guilty plea in light of Judge Hall's finding at sentencing the ACCA enhancement does not apply. In addition to being procedurally defaulted, this claim lacks merit for two reasons. First, there can be no deficient performance because Petitioner never alleges he requested Mr. Goolsby take the risky and quite unusual step of seeking

withdrawal of the guilty plea after sentencing.  (See generally doc. nos. 96, 103.)  Second, there can be no prejudice because after sentencing "the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack."  Fed. R. Crim. P. 11(e).

### E.    Grounds One, Two, Three, and Four Are Also Procedurally Defaulted

Grounds One, Two, Three, and Four are also procedurally defaulted because Petitioner did not file a direct appeal, and they do not fall within any exception to default.  A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal."  Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting Frady, 456 U.S. at 166).  "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge."  United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994) (per curiam).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."  Mills, 36 F.3d at 1055.  In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal."  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

The procedural bar to claims that could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions:  (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Mills, 36 F.3d at 1055-56 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  "Cause" requires a showing of some external impediment that prevented a claim from previously being raised.  See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  "[F]utility cannot

constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'"  Bousley v. United States, 523 U.S. 614, 623 (1998) (citations omitted); see also United States v. Bane, 948 F.3d 1290, 1297 (11th Cir. 2020) ("[A] claim is not novel when counsel made a conscious choice not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel." (citations omitted)); Lynn, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.")

To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions."  Frady, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

Montano, 398 F.3d at 1280 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).  Actual innocence "applies to a severely confined category:  cases in which new reliable evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  Perkins, 569 U.S. at 394-95.

For the reasons discussed in detail above, Petitioner has not been prejudiced, thus, he cannot satisfy the cause and prejudice standard.  Petitioner's procedural default is not excused.  See Mills, 36 F.3d at 1055.  Moreover, Petitioner cannot satisfy the rigorous fundamental miscarriage of justice exception.  A fundamental miscarriage of justice occurs only where "a

constitutional violation has probably resulted in the conviction of someone who is actually innocent[.]" <u>Montano</u>, F.3d at 1279.  Petitioner does not present any new factual evidence and instead broadly asserts legal innocence due to ineffective assistance of counsel in Ground Four. (<u>See generally</u> doc. no. 96, p. 4.)  For these reasons, all of Petitioner's claims are procedurally defaulted.

**F.    The Court Rejects Any Freestanding Actual Innocence Claim in Ground Four**

The thrust of Ground Four appears to be the claim that Mr. Goolsby's pre-plea advice concerning the ACCA enhancement renders Petitioner's guilty plea unknowing and involuntary and he entered a plea to an offense for which he was "actually innocent."  (Doc. no. 96, p. 4.)  The Court rejected these arguments in Section B, *supra*.  The Court further rejects Ground Four to the extent, if any, Petitioner intends to assert a freestanding claim of actual innocence.  <u>See</u> <u>Cunningham v. Dist. Attorney's Off. for Escambia Cnty.</u>, 592 F.3d 1237, 1272 (11th Cir. 2010) ("[T]his Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases . . . .").

**III.   CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 103), Petitioner's § 2255 motion be **DISMISSED**, (doc. no. 96), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 10th day of July, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA